IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

FILED
3:07 pm, 5/20/08
Joyce W. Harris
Clerk of Court

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ALLAN IRVIN MOORE, | ) | Case No. 07-20217 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| BARBARA HAUGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 07-2043 |
| | ) | |
| ALLAN IRVIN MOORE, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER ON MOTION FOR SUMMARY JUDGMENT

On May 8, 2008, the Plaintiff's Adversary Complaint objecting to the Debtor's discharge came before the court on the Plaintiff's Motion for Summary Judgment. The court considered the facts and submissions of the parties and the applicable law and is prepared to rule.

### Jurisdiction

The court has jurisdiction over this complaint pursuant to 28 U.S.C. § 157(a) & 1334(a). This is a core proceeding under §157(b)(2)(J). A motion for summary judgment pursuant to Fed. R. Civ. P. 56, is made applicable in adversary proceedings by Fed. R. Bankr. P. 7056.

### Findings of Fact

The Debtor earned his income as a cattle buyer and breeder and, at one time,

operated his business under the name of Moore Land & Cattle Company. Barbara Hauge ("Hauge") obtained a default judgment against the Debtor in the Western District of Oklahoma on July 24, 2001, in the amount of $625,791.00 plus interest. The Debtor stopped acting as Moore Land & Cattle after Hauge obtained the judgment because "she had a lien on me."[1] Subsequently, the Debtor ceased using his own bank accounts and began to have his income deposited into the accounts of others and used for his benefit to pay his debts and provide him income. Hauge, attempted to and did collect on the judgment by garnishing Debtor's bank account "last November."[2]

On April 13, 2007, the Debtor filed for Chapter 7 bankruptcy protection scheduling more than $728,000 of non-priority unsecured debt of which Hauge was the largest creditor in the amount of nearly $626,000. Ms. Hauge filed an adversary complaint on July 23, 2007, requesting that the court deny the Debtor's discharge pursuant to 11 U.S.C. § 727 (a)(2)(A). In a series of transactions that occurred within at least one year prior to the Debtor filing his bankruptcy petition, the Debtor directed payments from cattle transactions be deposited into accounts of others and used for his expenses and income. The Debtor knew that Ms. Hauge was attempting to collect on the judgment obtained in the Western District of Oklahoma, as he stated, "yeah... I knew

---

[1] See Deposition of Allan Irvin Moore. By Telephone, Thursday, December 20, 2007. ("Deposition") at Page 9.

[2] Deposition at P. 17.

Page 2

from 2001 up until a year ago that she (Ms. Hauge) was trying to seek it."[3] The Debtor also had cases pending regarding other collection actions.

## Conclusions of Law

Summary judgment is appropriate only if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.[4] A party claiming relief may move, with or without supporting affidavits, for summary judgment.[5] A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit.[6] A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.[7]

The moving party has the burden of showing that no genuine issue of material fact exists.[8] In considering a motion for summary judgment, the court draws all reasonable inference in favor of the nonmoving party.[9] An opposing party may not rely merely on

---

[3] Deposition at P. 11, Line 13-15.

[4] Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056.

[5] Fed. R. Bankr. P. 7056.

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[7] *Id* at 249.

[8] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[9] *See Curtis v. Oklahoma City Public Sch. Bd. of Ed.*, 147 F.3d 1200, 1214 (10th Cir. 1998).

allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial.

Ms. Hauge seeks a denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A), that states:

> The court shall grant the debtor a discharge, unless the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed property of the debtor, within one year before the date of the filing of the petition.

To sustain an objection to discharge under 11 U.S.C. § 727(a)(2)(A), the evidence must establish: (1) that the debtor transferred, removed, or concealed the property; (2) that such property belonged to the debtor; (3) that the transfer, removal or concealment occurred within one year before the petition in bankruptcy was filed; and (4) the act was done with the intent to hinder, delay or defraud a creditor.[10] Intent to hinder, delay or defraud a creditor may be proved by circumstantial evidence.[11] The intent required must be actual intent.[12] Fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct.[13] Subsequent conduct is often probative of

---

[10] *In re Martin*, 88 B.R. 319, (D. Colo. 1988).

[11] *Id* at 322.

[12] *In re Booth*, 70 B.R. 391, 395 (Bankr. Colo. 1987).

[13] *Farmers Coop. Ass'n of Talmage, Kan. v. Strunk*, 671 F.3d 391, 395 (10th Cir. 1982) (Citing *In re Vecchione*, 407 F. Supp. 609, 615 (E.D. N.Y. 1976)).

one's intent on a prior occasion. Courts have established certain "badges of fraud," the existence of which establishes the intent element required under *Section 727*. These arise from debtor's acts and include, "a 'reckless indifference' to the truth" by the debtor. This "reckless indifference" is to be the same as fraud under *Section 727*.[14] The Tenth Circuit also expressly requires that the debtor's intent must be coupled with the transfer of the debtor's property which reduces assets available to other creditors.[15] The party objecting to the debtor's discharge has the burden of proving that the acts complained of actually occurred.[16] Creditor is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor.[17] "Claim" is the right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.[18] As an attack on dischargeability under § 727 is much more severe in its effect than excepting a single debt from discharge under §523, the grounds must be established by clear and convincing evidence.[19] Clear and convincing evidence indicates

---

[14] *Booth* at 395 (Citing *Diorio v. Kreisler-Borg Const. Co.*, 407 F.2d 1330 (2nd Cir. 1969)).

[15] *Rutter v. General Motors Acceptance Corp.* 70 F.2d 479 (10th Cir. 1934).

[16] Fed. R. Bankr. P. 4005.

[17] 11 U.S.C. § 109(9)(A).

[18] 11 U.S.C. § 101(4)(A).

[19] *Booth* at 394.

that the issue to be proved is highly probably or reasonably certain.[20]

Ms. Hauge meets the definition of "creditor" as the judgment entered against the Debtor was entered in the Western District of Oklahoma court on July 24, 2001, substantially prior to the date the Debtor filed for bankruptcy protection on April 13, 2007. The judgment was a claim on Hauge's right to payment.

The uncontroverted facts present clear and convincing evidence that the Debtor transferred and concealed property. The Debtor admitted in his deposition that after the judgment was entered against him in the Oklahoma court, he did not deposit funds owed to him in his own account, but directed the payments to be held by others, including: Geri Mathews, his ex-wife; various livestock companies; and, Terah Murphy. These individuals or companies held funds for the Debtor until he needed money. He would let them know that he wanted funds by calling them on the telephone or driving by to collect the funds.

The funds were the Debtor's property. He testified that the funds held by his ex-wife, the various livestock companies, and Terah Murphy, were the result of cattle deals.

The Debtor's practice of having others keep his funds began shortly after Ms. Hauge obtained the judgment and continued through the end of 2006. The Debtor testified during his deposition that:(1) he was actively engaged in the cattle business in 2006, (2) that he would sometimes use Burlington Livestock's checkbook or Wally

---

[20] *Black's Law Dictionary*, 577 (8th ed. 2004).

Jassman's or Max Wise's; and, (3) that specifically, Burlington Livestock, Wally Jassman or (Jasmer), and the Debtor's ex-wife would hold funds for the Debtor until he needed the funds. The Debtor admitted that this was an atypical business practice within the cattle buying industry's regular course of business. The Debtor continued this practice when he conducted business with Terah Murphy through the end of 2006, within one year before the Debtor's bankruptcy petition was filed on April, 2007. The Debtor estimated that he made "somewhere between $20,000 and 3 million dollars" over the time frame that Terah Murphy was handling his funds through late 2006. He also testified that he bought and sold the cattle and the money was sent to Ms. Murphy. Ms Murphy, after receiving the checks, would give him half the cash of at least part of the checks.

The Debtor's course of conduct shows, by clear and convincing evidence, that he intended to hinder, delay and defraud his creditor. Specifically, the Debtor continued to buy and sell cattle, while using others' accounts to maintain his funds and distribute his income. Additionally, he admitted during his deposition that he conducted business under the name of Moore Land & Cattle, "until Barbara Hauge got her snout in the deal;" that he stopped acting as Moore Land & Cattle because she (Hauge) "had a lien on me;" that she (Hauge) "closed down my account in Oklahoma last November, (meaning November 2006); alleged that he lost his dealer's bond in November because of Ms. Hauge when he lost his checking account; and that he had used the atypical business practice of using others' banking accounts for his funds because "Hauge and everybody was looking down

his throat." The Debtor's conduct and admissions establish that it is highly probable and reasonably certain that he intended to hinder, delay and defraud Hauge on the collection of her judgment.

In the case before this court, as in *Booth*, the Debtor did not keep any financial records. He admitted in this deposition that he operated his business with "little white sheets of paper or something like that" which he threw away after completing sales. He did not have any other paperwork to document cattle transactions. He stated he didn't have to keep records because the buyers of the cattle were "very professional people, very high class, very wealthy people. And they have the extremely best CPAs in the world keep records for you. I don't have to keep any records." When asked about the books and records regarding transactions with Terah Murphy through late 2006, he stated that he did not have the books, alleging that Ms. Murphy had all the books; that the books were destroyed, that Ms. Murphy had destroyed them by burning them in a ravine between Duchesne and Vernal; and that this was told to him by a third party that "he met down there before..." Throughout the deposition, the Debtor's responses to the questions asked were evasive and vague. The Debtor insisted he had only one checking account and then later admitted he had another for "gambling." The Debtor's responses prove the element of reckless indifference for the truth in providing the court evidence of the Debtor's intent to commit fraud against creditors.

In determining if the Debtor's discharge should be denied upon summary

judgment, the court, in this case, considers all inferences in favor on the Debtor to determine if there is a genuine issue as to any material fact and whether Hauge is entitled to a judgment as a matter of law. The Debtor did not set out specific facts showing that there is a genuine issue for trial. Debtor's response does not contain any facts in controversy. Instead, Debtor argued that he did not intend to hinder, delay or defraud a creditor, only that he was depositing his personal earnings into others' accounts "merely as a desire to survive" but did not provide facts to support his argument. This argument does not provide the court facts or evidence supporting that there is a genuine issue as to any material fact in controversy. The court is in the position to determined the issue of Debtor's discharge as a matter of law.

The uncontroverted facts establish by clear and convincing evidence, that in late 2006, within a year prior to the Debtor filing for bankruptcy protection, he transferred and concealed his income. He did this by directing others, including Terah Murphy, to hold funds owed to him in their accounts and for his benefit. He obtain funds, as needed, for his expenses by contacting them and getting the funds directly. He operated in this atypical fashion for the purpose of hindering, delaying and defrauding his creditors in general.

One of the Bankruptcy Code's fundamental goals is to relieve the honest but unfortunate debtor of his indebtedness, allowing him to make a financial fresh start through the discharge of debt. The Bankruptcy Code provides most debtors with a fresh

start. It also prevents dishonest debtors from improperly using it as a shield.[21] In this case, the Debtor's conduct throughout the years, and specifically within one year prior to filing for bankruptcy protection demonstrates a clear disregard for financial and personal responsibility. To allow the Debtor to use the Code in this manner, violates the fresh start policy. Plaintiff's complaint requesting that the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A) be denied, is granted.

The court will issue a judgment in favor of the plaintiff on her complaint.

DATED this 20 day of May, 2008.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
Timothy Stubson
Ken McCartney

---

[21] *In re Cornelius*, 333 B.R. 850 (N.D.Fla. 2005)